# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

The Estate of Dorothy P. Southard,
Stephen R. Southard, Executor,

    Plaintiff,

v.

United States of America,

    Defendant.

Case No. 2:05-cv-416

Judge Michael H. Watson

## OPINION AND ORDER

Before the Court is January 12, 2007 Motion of Plaintiff, Estate of Dorothy P. Southard (hereinafter "Estate" or "Plaintiff"), for Partial Summary Judgment (Doc. 12). Defendant, United States of America (hereinafter "Defendant"), filed a Memorandum in Opposition on February 6, 2007 (Doc. 24). Plaintiff filed a Reply Memorandum on April 30, 2007 (Doc. 25).

This matter is now ripe for review. For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment is hereby **GRANTED.**

## I.  FACTS

In 1940, Mr. Herbert Penney created two *inter vivos* trusts (hereinafter "Trust 1" and "Trust 2" or collectively "Trusts") for the benefit, in part, of his daughter, Dorothy R. Southard. Huntington National Bank (hereinafter "Bank" of "Trustee") was named trustee of Trust 1 and Trust 2. Beginning in May 1966, and lasting until her death, Ms. Southard received a 3% annuity from the Trusts. This annuity was described as follows:

> At the time of the establishment of the separate funds, as aforesaid, and at yearly intervals thereafter, the Trustee shall appraise each fund and shall pay in quarter-annual installments, or oftener, an annuity in amount equal to 3% of the

> last appraised value of each fund, to the beneficiaries of such fund, per stirpes; said fixed annuity of 3% to be made without regard to the income of the fund.

The Trusts specifically state Ms. Southard was to receive the 3% annuity regardless of the income of the Trusts. However, the Trusts were devoid of any provision entitling her to the net income of the Trusts. Instead, the Trusts state, "the income from each fund, as it is received, shall be invested and become a part of the principal or capital of such fund." In addition, the Trusts provided Ms. Southard the right to withdraw up to 5% of the last appraised value of the Trusts in any given year. This right was not cumulative; in other words, she could not forego the right one year, and collect 10% the next.

In July 1966, the Bank informed Ms Southard that payment of the 3% annuity from Trust 2 would exceed the net income and thus, payment would require the liquidation of J.C. Penney Stock. Plaintiff alleges Ms. Southard previously indicated her preference to the Bank not to sell J.C. Penney stock. As such, in July 1966, the Bank asked Ms. Southard if she would accept the net income from Trust 2 in lieu of the 3% annuity. Plaintiff agreed by executing a letter prepared by Larry Green, the Bank's representative, in August, 1966.

In 1967, a similar situation occurred with Trust 1. Again, Ms. Southard signed a letter from the Bank, agreeing to accept the net income instead of the 3% annuity. This letter was signed in June, 1967. Thereafter, the Bank disbursed the net income from the Trusts instead of the 3% annuity.

From 1966 to 1974, the net income from the Trusts was less than 3% of its last appraised value and, hence, less than the 3% annuity she would have received each

year. During this same time-period, Plaintiff exercised her right to withdraw the additional 5% four times: 1966, 1967, 1973, and 1974.

In 1975, the net income from the Trusts exceeded the 3% annuity. From this time until Ms. Southard's death in 2000, the net income from the Trusts generally exceeded the 3% annuity. Nonetheless, the Bank continued to distribute the net income to her despite the fact it generally exceeded the 3% annuity.

Ms. Southard died testate in Franklin County, Ohio, on July 26, 2000. Her Will was admitted to probate in Franklin County and Ms. Southard's son, Stephen R. Southard, was appointed the executor of the Estate. The Will contained four bequests, with the remainder left to a trust established by Ms. Southard in 1996. It also stated her appointment of Mr. Southard as beneficiary to the Trusts, and he became the sole remainderman under the Trusts.[1]

After Ms. Southard's death, the payments by the Bank in excess of the 3% annuity from 1975 until her death were discovered. Mr. Southard, as remainderman of the Trusts, demanded the Bank make the Trusts whole. As such, in July 2001, the Bank presented two claims against the Estate asking for all amounts wrongfully paid, if any, in excess of the 3% annuity, plus interest. Mr. Southard, as executor, acknowledged and allowed both claims.

In October 2001, the Estate filed its United States Estate Tax Return Form 706 (hereinafter "Return") with the Internal Revenue Service (hereinafter "IRS"), claiming

---

[1]The Trusts gave Plaintiff a power of appointment to name a person or persons to receive each Trusts's assets upon her death. (Doc.12)

$2,433,458, the estimated amount of the Bank's claims, as a deduction from the gross estate. The Estate calculated this amount by computing the amount of each year's alleged overpayment and then added interest on each payment through the date of Ms. Southard's death. The IRS audited the Estate's Return and denied the deduction of $2,433,458.

In February 2003, the Bank filed suit against Mr. Southard, individually and as the executor of the Estate, in the Franklin County Court of Common Pleas, Probate Division (hereinafter "Probate Litigation"). The suit sought a declaratory judgment for the recovery of any overpayments from the Trusts, along with interest. In the Probate Litigation, the Estate, Bank, and Mr. Southard filed stipulations of fact concerning a schedule of overpayments made to Ms. Southard and interest.

In July 2004, the Franklin County Probate Court entered judgment in favor of the Bank and against the Estate for $2,971,696. This represented the overpayments from the Trusts to Ms. Southard and interest as determined by the Franklin County Probate Court.

In February 2005, the Estate timely filed a claim for refund with the IRS for $4,251,270 of the paid estate tax. The refund was requested, in part, on the deductibility of the Bank's claim against the Estate. The IRS denied the Estate's claim for refund based on the deductibility of the Bank's claims against the Estate.

On April 27, 2005, Plaintiff filed this action against Defendant under 26 U.S.C § 2053(a)(3) for refund of Federal Estate Taxes paid.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if there is "some" factual dispute between the two parties; the factual dispute between the parties must be about a genuine issue of material fact. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–8 (1986). A factual dispute is genuine if the evidence on which the non-moving party relies could convince a reasonable juror to return a verdict in favor of the non-moving party. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). A factual issue is material if its resolution could effect the disposition of the case under the governing substantive law. *Id.*

When reviewing a summary judgment motion, the court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 794 (6th Cir. 2004). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Gues v. Leis*, 255 F.3d 325, 335 (6th Cir. 2001), *quoting Anderson*, 477 U.S. at 252. Summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the

existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. ANALYSIS

First, the Court will briefly address Defendant's argument that Plaintiff's Motion should not be considered by the Court as it was untimely filed. The Court already considered Defendant's argument regarding the untimeliness of Plaintiff's Motion and granted Plaintiff leave to file its untimely Motion. Defendant again asserts this argument. However, the Court concludes there is no new fact or argument presented by Defendant which compels the Court to reconsider its earlier decision.

### A. Federal Tax Law

The Internal Revenue Code states deductions from a decedent's gross estate are allowable "for claims against the estate . . . as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered." 26 I.R.C. §2053(a)(3). Treasury Regulation 26 C.F.R. §20.2053-1(b)(2) states the decision of a local court may be helpful in answering whether a claim is allowable by the laws of the jurisdiction in which the estate is administered, but a local court decision is not a prerequisite for finding deductibility. Specifically, this section provides, "[t]he decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends." 26 C.F.R. §20.2053-1(b)(2). It further provides it is not sufficient for a local court to purport to pass on the facts upon which

deductibility depends; rather, it must actually do so. *Id.* However, this is to be presumed in all cases of an "active and genuine contest." *Id.* However, the lack of an active and genuine contest does not render a local court's decision necessarily inapposite, but instead only removes the *presumption* it actually passed upon the merits of the case.

### B.     The Probate Court Decision

Defendant argues the Franklin County Probate Court's decision is not an active and genuine contest which can bind the United States when it is not a party to an action. Defendant cites *Comm'r v. Estate of Bosch*, 387 U.S. 456, 457 (1967), in support of this proposition.

In *Bosch,* the court faced the issue of whether a state trial court's decision, which nullified a widow's release of her general appointment power over a trust, was binding on the government for purposes of a federal estate tax deduction based on a marital deduction of the widow's trust. *Id.* at 458. The Supreme Court examined the legislative history surrounding the federal taxing statute and noted the "very guarded language," of a report of the Senate Finance Committee which recommended that "proper regard should be given to interpretations of the will rendered by a court in a bona fide adversary proceeding." *Id.* at 463-64, citing S.Rep. No. 1013, Pt.2, 80th Cong., 2d Sess., 4. The Supreme Court reasoned from this language it

> "cannot say that the authors of this directive intended that the decrees of state trial courts were to be conclusive and binding on the computation of the federal estate tax as levied by Congress. If the Congress had intended the state trial court determinations to have that effect on the federal actions, it certainly would have said so-which it did not do." *Id.* at 464.

The situation in *Bosch*, however, is distinguishable from the situation currently before the Court. The issue is not a marital deduction, but a deduction for claims against the Estate. Moreover, while 26 C.F.R. §20.2056, allowance for marital deduction, is facially silent on the issue of local state court decisions, 26 C.F.R. §20.2053-1(b)(2) is not. Instead, as previously stated, §20.2053-1(b)(2) specifically provides the decision of a local court, as to the validity and amount of a claim, will ordinarily be accepted so long as the court passes upon the facts upon which deductibility depends.

This position finds additional support in *Goodwin's Estate v. C.I.R.*, 201 F.2d 576, 582 (6th Cir. 1953), which holds that when an Ohio probate court finds certain claims against a decedent's estate are valid, the tax court has no authority to set aside that decision when determining allowability of an estate tax deduction based on those claims. Thus, the Franklin County Probate Court's decision in this case will stand as to the validity and amount of the claims against the estate so long as it actually passed upon the merits of the claim.

Defendant also argues the Franklin County Probate Court decision is not the result of an active and genuine contest as there was collusion between the Estate and the Trusts. However, the Court finds Defendant's position unavailing. Defendant fails to offer evidence of collusion, instead asserting the facts speak for themselves. Specifically, Defendant argues collusion is evident by the following facts

1.  Mr. Southard, as remainderman of the Trusts, demanded the Bank compensate for the deficiency in the Trusts,

    2.      In response to Mr. Southard's demand, the Bank instigated claims against the Estate,
    3.      Mr. Southard, as executor of the Estate, allowed the claims, and
    4.      Mr. Southard and the Bank stipulated to the amounts of overpayment and interest.

However, this is not sufficient evidence of collusion. Mr. Southard, as remainderman of the Trusts, had an interest in seeing the Trusts restored. Further, as executor of the Estate, he had a legal duty to allow proper claims against the Estate. Moreover, the Court will not hold that when parties to a litigation stipulate to verifiable facts it is, by itself, evidence of collusion. To conclude otherwise would have a chilling effect on litigation. Courts should encourage, not discourage, parties from stipulating to information whenever possible, especially when the facts are verifiable by records and are not in dispute.

Accordingly, the Court does not find collusion between the parties. Nonetheless, the Court will proceed with its analysis assuming the Franklin County Probate Court decision was not the result of an active and genuine contest between the parties. In so doing, the Court is unable to presume the Franklin County Probate Court passed upon the merits of the case. As such, the Court must examine whether the Franklin County Probate Court passed upon the merits of the dispute regarding the claims submitted to the Estate by the Bank.

Upon review, the Court finds the Franklin County Probate Court considered the merits of the Bank's claim. The July 2004 Order established the essential facts of the case:

1. The Trusts limited Plaintiff's rights to an annual 3% annuity with the possibility of an additional 5% withdraw upon written request,
2. Mr. Southard was the Executor of the Estate and the sole remainderman of the Trusts,
3. The Bank agreed to distribute, and Plaintiff agreed to accept, the net income from the Trusts in lieu of the 3% annuity,
4. From 1975 until her death, the net income from the Trusts exceeded the 3% annuity, and
5. Plaintiff made written requests in 1967, 1973, and 1974 for the additional 5%.

As such, the Franklin County Probate Court considered the merits of the claim when it entered judgment in favor of the Bank and against the Estate for $2,971, 696.

### C. The Bank Had a Valid Claim Against Plaintiff's Estate for Unjust Enrichment

However, even if the Franklin County Probate Court did not pass upon the merits of the claim, reviewing this cause of action *de novo*, the Court finds the Bank had a valid claim against the Estate under Ohio law for unjust enrichment.

Unjust enrichment occurs when a defendant possesses and retains money or a benefit which belongs to a plaintiff in justice and equity. *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118, 130 (Ohio, 2002), *quoting Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938) The theory behind the cause of action is no one should "be allowed to profit or enrich himself inequitably at another's expense, but should be required to make restitution of . . . property. . . received . . . where it is just and equitable that such restitution should be made." *Norton v. City of Galion*, 573 N.E.2d 1208, 1219 (Ohio App. 1989) (citation omitted). To prove a claim for unjust enrichment, a plaintiff must prove:

1. a benefit has been conferred on the defendant,
2. knowledge by the defendant of the benefit, and

    3.      retention of the benefit by the defendant under circumstances such that it would be unjust to do so without payment.

*Brown-Graves Co. v. Obert*, 98 Ohio App.3d 517, 523 (9th Dist. 1994).

### 1. The Bank Conferred a Benefit Upon Plaintiff

As the Ohio Supreme Court held in *Daloia v. Franciscan Health Sys. Of Cent. Ohio, Inc.*, 79 Ohio St. 3d 98, 102-03 (Ohio, 1997), the powers of a trustee are confined by the terms of the trust itself. *See also Biles v. Webb,* 118 Ohio St. 346 (1928); *Shuster v. North American Mortg. Loan Co.*, 139 Ohio St. 315 (1942). While trustees have some discretion, they cannot act to frustrate the manifest intent of the testator. *Biles,* 118 Ohio St. at 356. Furthermore, a testator's intent can be ascertained by the language of the trust when that language is not ambiguous. *Daloia,* 79 Ohio St. at 103, citing *Domo v. McCarthy*, 66 Ohio St.3d 312, 314 (1993).

In the instant action, the Trusts state the Bank, as trustee, holds the money in trust "for the following purposes and uses, and none other, and subject to the terms, conditions, powers, duties and agreements hereinafter set forth." The Trusts further state the beneficiaries are to receive "an annuity in an amount equal to 3% of the last appraised value of each fund." This "fixed annuity of 3%" was to be made regardless of the fund's income for that year. However, the Trusts also establish the beneficiaries could receive "a sum not to exceed 5% of the last appraised value", in addition to the 3% annuity, but that such a withdrawal "shall be made upon the written request of the beneficiary to the Trustee."

The Court concludes the language of the Trusts clearly states the testator's intentions. Mr. Penney intended the beneficiaries receive only the fixed 3% annuity unless the beneficiary requested, in writing to the trustee, the 5% of the Trusts' last appraised value. Further, the Court disagrees with Defendant's position that the 5% withdrawal which "shall be made upon the written request of the beneficiary to the Trustee" is merely a ministerial requirement rendering the written demand legally inconsequential. Instead, it is an express provision of the Trusts, and the trustee was powerless to confer to Plaintiff sums greater than the 3% annuity absent her express written request for an amount up to 5%. To find otherwise confers powers upon the trustee which are not contemplated by the Trusts and frustrates Mr. Penney's manifest intent.

Defendant next argues if a written request must be made, Ms. Southard's signature to allow distribution of the net income in lieu of the 3% annuity satisfies the written request requirement. Thus, Defendant asserts, so long as Plaintiff did not receive more than 8% in any given year, she was not overpaid as she had thereby "requested" an additional sum of up to 5%. This argument is unpersuasive for several reasons.

First, the letter from the Trustee requesting Ms. Southard agree to receive net income on the Trusts instead of the 3% annuity is dated June 27, 1967, eight years before the net income from the Trusts exceeded the 3% annuity and would have been sufficient to include the additional 5%. Further, the letter explicitly states net income is to be distributed instead of the 3% annuity. The Trustee apparently did not consider this agreement as a written request for the additional 5%, as the letter states "[u]nder

the terms of this Trust, you have the non-cumulative right to withdrawal up to 5% annually. I don't believe there would be any real tax problem should you decide to exercise this right . . ." *Id.* This illustrates the Trustee considered the right to a written request of 5% *in addition to* the net income. This interpretation is buttressed by the actions of both the Bank and Ms. Southard. After signing the letter allowing the Bank to distribute the net income instead of the 3% annuity, the Bank sent Plaintiff three letters acknowledging her written request for the additional 5%. These letters occurred in 1966, 1967, 1973, and 1974, the time-frame in which the Bank stopped distributing the 3% annuity and started distributing the net income. Moreover, If Ms. Southard's signature consenting to distribution of the net income constituted a written request for the additional 5%, the Bank could only grant that request for the year of her signature, as her right to the 5% was non-cumulative and able to be exercised once annually.

Accordingly, when Ms. Southard intended to make a written request for the additional 5% withdrawal, she did so in a letter to the Bank explicitly requesting it. Further, Ms. Southard's signature to allow distribution of net income in lieu of the 3% annuity did not constitute a written request for a sum of up to 5% of the value of the Trusts, Thus, Defendant's argument Ms. Southard was never overpaid by the Bank is without merit. In this case, there was clearly a benefit conferred upon Plaintiff. From 1975 until her death, she was paid from the Trusts amounts in excess of the 3% annuity to which she was entitled by the express terms of the Trusts.

### ii. Ms. Southard Knew of the Benefit

Moreover, Ms. Southard knew of the benefit she was receiving from the Bank. While neither the Bank nor Ms. Southard was aware the payments exceeded the terms

2:05cv416　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　13

Case: 2:05-cv-00416-MHW-TPK Doc #: 26 Filed: 08/20/07 Page: 14 of 17 PAGEID #: 550

of the Trusts, both knew the payments were being made. Moreover, after discovering the mistake, both the Estate and the Bank knew this benefit exceeded the allowed 3% annuity.

### iii. Justice and Equity Demand that the Trusts be Restored

Last, it would be unjust not to restore the overpaid funds to the Trusts. The funds legally belonged to the Trusts, and the Trustee was not empowered to pay anything in excess of the 3% annuity to Ms. Southard. Thus, she had no legal right to any of the overpaid funds. It would be unjust to allow the funds to remain in the Estate, instead of the corpus of the Trust. On behalf of the future beneficiaries to the Trusts, justice and equity require that the Trusts manage all funds they are legally entitled to. Otherwise, future beneficiaries are deprived of the funds to which they are expressly entitled under the terms of the Trusts.

### D. The Statute of Limitations Did Not Bar the Bank's Claim

The Government argues the Bank's claims against the Estate are not allowable under Ohio law because they were barred by the statute of limitations. Two statutes of limitations are applicable in this case. First, the statute of limitations for any claim against an estate was one year under O.R.C. §2117.06 at the time of Plaintiff's death on July 26, 2000. As the Bank presented its claims against the Estate on July 25, 2001, O.R.C. §2117.06 does not bar the claims. Second, is the statute of limitation for the cause of action, unjust enrichment. Typically, the statute of limitations for a claim of unjust enrichment is six years. O.R.C. §2305.07; *Drozeck v. Lawyers Title Ins. Corp.*, 140 Ohio App.3d 816, 823 (8th Dist. 2000).

<mark>2:05cv416                                                                                                        14</mark>

Nevertheless, the statute of limitations does not apply in this case. O.R.C. §2305.22 states that O.R.C. §§2305.03 - 2305.21 do not apply "in the case of a continuing and subsisting trust." Three elements are necessary to constitute a continuing and subsisting trust to which the statute of limitations does not apply. First, "it must be a direct trust. Second, it must be of the kind belonging exclusively to the jurisdiction of a court of equity. Third, the question must arise between the trustee and the *cestui que trust*." *Allen v. Deardoff*, 1921 WL 1292, *2 (Ohio App.1 Dist. 1921.)

In this case, Mr. Penney established direct *inter vivos* trusts. Moreover, the claim was by the Bank, as trustee, against the Estate of the beneficiary. Thus, the dispute was between trustee and the *cestui que trust*. The complex element is the second, that the trusts must be of a kind belonging exclusively to the jurisdiction of a court of equity.

A court of equity will not ordinarily have jurisdiction where a party is seeking monetary relief. *State ex. rel. Lien v. House*, 144 Ohio St. 238 (Ohio 1944), *citing Weidman v. Weidman,* 274 Mass. 118 (Mass. 1931). Therefore, to bring a cause of action within the purview of a court of equity, "it is requisite that the primary right involved be an equitable right as distinguished from a legal right, or that the remedy at law as to the right involved is not full, adequate, and complete." *Id.* (citation omitted).

Unjust enrichment can be either a common law remedy or an equitable remedy. *N. Olmsted City School Dist. Bd. of Edn. v. Cleveland Mun. School Dist.*, 108 Ohio St.3d 479, 489-90 (2006) The difference lies in the intent of the suit. "To lie in equity, it must not seek to impose personal liability on the defendant, but to restore to the plaintiff particular funds in the defendant's possession." *Id.* at 490, *quoting Santos v. Ohio Bur.*

of Worker's Comp., 101 Ohio St.3d 74, 2004-Ohio-28 ¶13. In other words, a suit which seeks money as compensation or a substitute for an injury is a suit at law, whereas "a suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity." Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Services, 114 Ohio St.3d 14, 18 (2007), citing Santos, 101 Ohio St.3d at ¶17.

The Bank did not seek monetary compensation for injuries suffered; rather it sought a return of funds rightfully belonging to it. Thus, the claim was a purely equitable claim for unjust enrichment.

Defendant attempts to characterize the claim as one for the return of money, which is a legal, as opposed to an equitable, action. In support, Defendant relies upon Douglas v. Corry, 46 Ohio St. 349 (Ohio 1889) (receipt of money by an attorney, which is to be paid over to a client, is not a case of a continuing and subsisting trust, but a plain tort action for money had and received, and is subject to the six-year statute of limitations). However, Defendant's reliance is misplaced. In an action for the return of money, there must be an express or implied promise to repay the money advanced. Gordon v. Guarantee Title & Trust Co., 28 Ohio L. Abs. 249 (Former 2nd Dist. 1938). In the instant action, there is no evidence of an express or implied promise for Ms. Southard to repay the misappropriated funds to the Trusts. While Ms. Southard was aware of the payments she received from the Bank, she did not know she was receiving money to which she was not entitled under the terms of the Trusts. As such, Ms. Southard was unable to make either an express of implied promise to repay the

misappropriated funds to the Trusts. Thus, *Douglas* is distinguishable from the situation before the Court.

Defendant also cites *Owner Operator Indep. Drivers Assoc. Inc. v. Comerica Inc.*, 2006 WL 1339427, *6-7 (S.D. Ohio May 16, 2006) (action by business association for money improperly debited from bank account), in support of its arguments. However, *Owner Operator* does not provide support for Defendant's argument as it involves a trust implied by law and the within Trusts are direct trusts. Thus, the trust in *Owner Operator* fails the first of the three elements of a continuing and subsisting trust.

## IV. CONCLUSION

The Court finds Plaintiff's claim is not barred by the statute of limitations. Furthermore, this Court concludes the the Franklin County Probate Court reached the correct decision in allowing the Bank's claim against the Estate for unjust enrichment. The Trusts conferred a benefit on Plaintiff, Plaintiff knew of the benefit, and justice demands the benefit be repaid. Based on the above, the Court **GRANTS** the January 12, 2007 Motion of Plaintiff for Partial Summary Judgment (Doc. 12)

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**